2022 IL App (1st) 211255-U

No. 1-21-1255

Order filed December 13, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 3722 |
| | ) | |
| KYJUANZI HARRIS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm denial of leave to file a successive postconviction petition. Defendant does not establish a colorable claim of actual innocence based on a witness's affidavit because he does not demonstrate the affidavit is new evidence. He does not establish cause and prejudice for his claim that his sentence is unconstitutional based on his youth and background.

¶ 2     Defendant Kyjuanzi Harris appeals from the circuit court's order denying him leave to file a successive petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). He argues that he established a colorable claim of actual innocence based on newly

discovered evidence, namely, a witness's affidavit averring that the witness observed someone else commit the murders for which defendant was convicted. He further argues that he established cause and prejudice for his claim that his mandatory life sentence is unconstitutional because he was 21 years old at the time of the murders. We affirm.

¶ 3　Following a 2012 jury trial, defendant was convicted of the first degree murders of Derrick Armstrong and Bernadette Turner. He was sentenced to two mandatory, concurrent life sentences, pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008)). We affirmed on direct appeal. *People v. Harris*, 2016 IL App (1st) 141206-U. As we have provided detailed accounts of the facts in prior orders, we recount the facts here only as necessary to resolve the issues in the instant appeal.

¶ 4　At trial, Tamira Smith testified that, on the evening of May 21, 2009, she, Turner, and Armstrong were parked in a two-door Pontiac Grand Am on the 3000 block of Van Buren Street, near Horan Park, in Chicago. Armstrong was in the driver's seat, Turner in the front passenger's seat, and Smith in the rear seat behind Turner. There were "a few" people outside.

¶ 5　Around 9:15 p.m., a black vehicle approached the Grand Am's passenger's side. Although the driver wore a mask or scarf covering his mouth and nose, Smith observed his complexion, eyes, and dreadlocks from about three feet away for 5 or 10 seconds. She identified him in court as defendant. He extended a firearm and fired continuously at the Grand Am's front passenger window. Smith ducked until he drove away.

¶ 6　After the shooting, things were "crazy," and people screamed. Smith was shocked. Armstrong and Turner had been shot. She pushed Armstrong aside so she could exit, then pulled him and Turner out of the vehicle. Ambulances arrived and transported Armstrong and Turner to

the hospital. Smith went to the police station to talk to detectives. She again met with detectives in November 2010 and February 2011, when she identified defendant in a photo array and an in-person lineup, respectively.

¶ 7    Debra Hardy testified that she knew defendant, Armstrong, and Turner, who was like her goddaughter. Hardy was in Horan Park from around 5 p.m. to around 9:30 p.m. on the day of the shooting. She initially testified she was a few inches from the Grand Am, but later stated she was on a bench about 20 feet away. Other people were also in the park, a heavy traffic area. Around 9:30 p.m., she observed defendant drive next to the Grand Am and fire at it. His face was uncovered. Hardy ran to Turner. When the ambulances arrived, she followed them to the hospital. Hardy did not go to the police. Detectives eventually located and interviewed her, and she gave defendant's name and identified him in a photo array.

¶ 8    Detective David Roberts testified that he was assigned to the investigation around 10 p.m. on May 21, 2009. However, he later testified that he arrived at the scene about three minutes after the shooting, as the ambulances were leaving. There were only a few witnesses present, but Roberts learned from the first officer who responded that there had been "many people present" when that officer arrived. Roberts did not interview any witnesses at the scene but interviewed Smith at the police station that night. Defendant was arrested in February 2011.

¶ 9    The jury found defendant guilty of first degree murder for the deaths of Turner and Armstrong.

¶ 10    Defendant's presentence investigation report (PSI) reflected that he was 21 years old on the date of the offense. His parents were not together but had provided good homes. His father was killed in 2003. Defendant denied any past or present gang affiliation, or being diagnosed with a

psychological, learning, or behavioral disorder. He began drinking alcohol and smoking marijuana when he was 16 years old. He got drunk twice a week and smoked five or six "blunts" per day. He was expelled from school during his senior year for being late. He had eight prior nonviolent convictions, including a 2009 conviction for which he was sentenced to boot camp. Between his release from boot camp and his arrest in this case 11 months later, he did not drink alcohol or smoke marijuana. During that time he took ecstasy two or three times a month but stopped when it caused blood in his urine. He denied that he ever had a substance abuse problem.

¶ 11    At the sentencing hearing, the court noted that it lacked discretion and sentenced defendant to concurrent terms of life imprisonment without the possibility of parole. Defendant appealed and we affirmed. *People v. Harris*, 2016 IL App (1st) 141206-U.

¶ 12    In August 2018, defendant, through counsel, filed a petition for relief under the Act. Relevant here, he raised a claim of actual innocence based on newly discovered evidence. The evidence included an unnotarized summary from a private investigator, signed by Hardy, stating that Hardy told the investigator the police coerced her into falsely testifying that defendant was the shooter. The real shooter was her nephew, Dennis Glover. The investigator also signed an unnotarized "affidavit" stating he had obtained a written and recorded statement from Hardy. Defendant further attached two unnotarized "affidavits" from Donathan Williams which stated that Glover, also known as "Sacky," told Williams he killed Armstrong and Turner.

¶ 13    The court docketed the petition and the State moved to dismiss it at the second stage of proceedings under the Act. Defendant's counsel filed an amended petition which, *inter alia*, reiterated that defendant was actually innocent. Defendant submitted with the amended petition a notarized affidavit from Hardy averring that her statement to the investigator was true, an audio

recording of the conversation between Hardy and the investigator, and defendant's own notarized affidavit averring that he was unaware of Hardy and Williams's information until August 2018.[1] The State filed a motion to dismiss the amended petition, which the circuit court granted. On appeal, we affirmed the dismissal. *People v. Harris*, 2020 IL App (1st) 190690-U. We declined to consider the content of Hardy and Williams's statements as they were unnotarized, and concluded that defendant did not make a substantial showing of actual innocence. *Id.* at ¶¶ 73-81.

¶ 14    On August 20, 2021, defendant filed the *pro se* motion for leave to file a successive postconviction petition at issue in this appeal. He first claimed that he was actually innocent based on newly discovered evidence in the form of a January 3, 2020, affidavit from Wynton Collins, which defendant attached.

¶ 15    In the affidavit, Collins averred that, around 9 p.m. on May 21, 2009, he and a woman sat on the hood of his vehicle on Van Buren Street. A black vehicle drove past him "to the car that was parked directly in front" of his. The driver of the black vehicle was "Sacky," whom Collins knew. Sacky fired 10 or 15 shots at the occupants of the vehicle in front of Collins's car. Collins ran to the north side of Van Buren, then west towards Albany Avenue. The woman ran in another direction and he never saw her again. He hid behind a parked vehicle and Sacky drove past him. After Sacky left, Collins ran back to his vehicle and saw "the two occupants" of the vehicle in front of his "looked deceased." He heard tires screeching, feared Sacky was returning, entered his vehicle, and drove away. He did not come forward about the murder because he feared for his and his family's safety. He was never interviewed by police, an attorney, or an investigator. He later

---

[1] The recording is not included in the record on appeal in the instant case. However, in our order affirming the circuit court's dismissal of defendant's petition, we noted that it was "consistent with [the] handwritten summary." *People v. Harris*, 2020 IL App (1st) 190690-U, ¶ 48.

met defendant in prison. One day, defendant told Collins why he was imprisoned, and Collins realized that the wrong person was convicted of Turner and Armstrong's murders.

¶ 16    Defendant also raised an as-applied constitutional challenge to his mandatory life sentence, claiming he was an emerging adult at the time of the offenses and his sentence was disproportionate. He alleged he could not have raised the claim previously because "[t]he law and the science supporting the law had not been sufficiently developed at that time." He argued that he was 21 years old at the time of the offenses with a brain similar to a juvenile's, possessed rehabilitative potential, experienced a traumatic childhood, and should be allowed to file a successive petition so he could develop the record supporting his argument.

¶ 17    In support of his sentencing claim, defendant attached his own affidavit explaining his background. When he was 1½ or 2 years old, he found a can of mace and sprayed it into his diaper, burning his skin in "a very traumatic experience." He was raised in a "rough and violent" housing project. He was bullied and often fought to protect his younger sisters. When he was nine years old, his aunt with whom he was very close died of cancer, and he saw his four-year-old sister get hit by a car. When he was 11 years old, he was struck in the forehead with a baseball bat, which resulted in stitches and a large knot for which he was bullied and teased, frequently causing him to enter fights. Two of his best friends were shot and killed around the same time. He began to smoke PCP-laced cigarettes and marijuana, drink alcohol, and take pills. His father was killed when defendant was 15 years old. He dropped out of school and started sleeping in abandoned vehicles and buildings. He was attacked by and recruited into a street gang, as part of which he sold drugs and stole things. He then lost his best friend in a car accident and another friend to a

drive-by shooting. However, since his incarceration, he achieved a high school diploma, resolved to be positive example for his daughter, and gained a mentor, Marvin Bryant.

¶ 18    Defendant attached an affidavit from Bryant averring that he was incarcerated with defendant and found defendant "decent, kind and respectful," "ambitious, motivated, resourceful, trustworthy and eager to learn." Defendant demonstrated remorse and Bryant requested the court allow defendant to return to society to parent his daughter and become a productive citizen. Bryant included a leadership certificate he received from a "Global Leadership Summit."

¶ 19    Defendant further submitted memorandums from the Illinois Department of Corrections (IDOC). One noted that IDOC was prioritizing reducing the prison population and providing meaningful reentry opportunities. The other discussed an incentive-based correctional model. He also attached a memorandum from a psychology professor and excerpts from articles that argued offenders aged 18 to 25 should be provided more protections than adults, as research revealed that human brains do not mature until approximately age 25. The psychology professor's memorandum further stated that young people who had experienced violence suffered a "double whammy" of "the general limitations of unformed brains and the disadvantaged functioning that arises from their adverse childhood experiences." (Emphasis omitted.)

¶ 20    Lastly, defendant attached his high school diploma and several of the materials he submitted with his initial postconviction petition, including the statement of the investigator who interviewed Hardy.

¶ 21    On August 30, 2021, the circuit court denied defendant leave to file a successive petition. Regarding his actual innocence claim, the court stated that Collins's affidavit lacked context and defendant failed to explain "what the lawyer at trial knew or didn't know about this witness and

how they came to come forward now." Regarding his sentencing claim, the court stated that, at 21 years old, defendant was not a young adult offender.

¶ 22    On appeal, defendant argues the court erred in denying him leave to file a successive petition. He first contends that, based on Collins's affidavit, he established a colorable claim of actual innocence.

¶ 23    The Act provides a statutory remedy where a defendant claims his constitutional rights were violated at trial. 725 ILCS 5/122-1 *et seq.* (West 2020); *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act contemplates the filing of only one postconviction petition. *Edwards*, 2012 IL 111711, ¶ 22. However, a defendant may file a second or successive petition where he establishes (1) a fundamental miscarriage of justice because he is actually innocent, or (2) cause and prejudice for failing to previously raise the claim. *Id.* ¶¶ 22-23. At the pleading stage, all well-pleaded allegations in the petition and supporting affidavits are taken as true unless positively rebutted by the record, and the court is not to make factual or credibility determinations. *People v. Robinson*, 2020 IL 123849, ¶ 45. We review *de novo* denials of leave to file successive petitions, whether they assert actual innocence or cause-and-prejudice. *Id.* ¶¶ 39-40.

¶ 24    A defendant must support his actual innocence claim with evidence that is (1) new, (2) material and noncumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Allen*, 2015 IL 113135, ¶ 22. Leave to file a petition claiming actual innocence should be denied "where it is clear from a review of the petition and attached documentation that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *People v. Sanders*, 2016 IL 118123, ¶ 24.

¶ 25    Here, the State does not dispute that Collins's affidavit is material and noncumulative. Rather, the State argues that the affidavit is not new or conclusive. We agree with the State that defendant has not shown Collins's affidavit is new, and we therefore need not determine whether it is conclusive.

¶ 26    To be new, evidence must have been discovered after trial and "could not have been discovered earlier through the exercise of due diligence." *People v. Coleman*, 2013 IL 113307, ¶ 96. An affidavit is newly discovered where no amount of due diligence could have forced the witness to testify to those facts at trial. *People v. Anderson*, 2021 IL App (1st) 200040, ¶ 59; *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48. The defendant bears the burden of demonstrating he exercised due diligence. *People v. Walker*, 2015 IL App (1st) 130530, ¶ 18. Further, due diligence "assumes at least some level of deductive reasoning in an active effort to discover evidence based on the knowledge and information already possessed by the litigants." (Emphasis and internal quotation marks omitted.) *People v. Barnslater*, 373 Ill. App. 3d 512, 526 (2007), *abrogation on other grounds recognized by Robinson*, 2020 IL 123849, ¶ 55.

¶ 27    Defendant argues that Collins's affidavit is newly discovered because Collins fled the scene of the shooting, was never approached by police, attorneys, or investigators, and did not come forward with his information about the shooting because he feared for his and his family's safety. Defendant thus asserts that there was no way for defendant to know that Collins possessed exonerating information until he met Collins in prison and Collins realized that defendant, not Sacky, was convicted of Turner and Armstrong's murders.

¶ 28    After reviewing the record, we find that Collins's affidavit cannot be considered new evidence. Again, to be new, evidence must not have been discoverable before trial through the

exercise of due diligence (*Coleman*, 2013 IL 113307, ¶ 96), and it is defendant's burden to show due diligence (*Walker*, 2015 IL App (1st) 130530, ¶ 18). Collins's affidavit establishes that no one approached him about the shooting and he did not come forward on his own because he feared Sacky. However, while Collins's affidavit may excuse his own failure to come forward sooner, it does not establish that defendant exercised due diligence in discovering him as a witness. *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 27 (affidavit explaining why witness did not come forward earlier "d[id] not address the question of the due diligence of the defendant in independently discovering" the witness). Collins does not aver in his affidavit, for example, that he moved away or otherwise became unavailable as a witness. *Cf. People v. Ortiz*, 235 Ill. 2d 319, 334 (2009) (witness "essentially made himself unavailable" by moving out-of-state shortly after witnessing crime).

¶ 29    Here, *Walker* and *Wingate* are instructive. In *Walker*, the defendant claimed actual innocence based on a statement from a witness, provided 27 years after the crime, that the witness observed the crime and the defendant was not the perpetrator. *Walker*, 2015 IL App (1st) 130530, ¶¶ 6, 18. The witness did not allege that he failed to come forward out of fear for repercussion or explain his 27-year absence or his whereabouts between the crime and the statement, and the defendant did not explain why the witness had not been previously located. *Id.* ¶ 18. The majority found that the witness's statement was not newly discovered evidence. *Id.* The dissent argued that the defendant should not have been expected to find witnesses supporting his actual innocence claim while he was incarcerated and had no way of knowing the witness observed the crime. *Id.* ¶ 34 (Pucinski, J., dissenting). The majority countered that it was the defendant's burden to show

due diligence, and the statement was not new evidence because he failed to explain why the witness was not previously located. *Id.* ¶ 18.

¶ 30 In *Wingate*, an affiant who was at the scene of a shooting came forward several years later and averred that one of the people at whom the defendant shot raised a firearm towards the defendant before the defendant fired. *Wingate*, 2015 IL App (5th) 130189, ¶ 20. However, the affidavit contained no facts suggesting that the affiant was positioned such that he could not have been observed by other people at the scene of the shooting, or facts suggesting the affiant was unavailable or could not be located after the crime. *Id.* ¶¶ 27-28. Nor did the postconviction petition allege any facts regarding whether other witnesses who were interviewed by police failed to tell the police the affiant was at the scene. *Id.* ¶ 29. Thus, at the second stage of postconviction proceedings, we found that the defendant did not allege "*any* facts that would, if taken as true, validate the proposition that the defendant exercised due diligence" in attempting to discover the affiant. (Emphasis in original.) *Id.* ¶ 30.

¶ 31 The same reasoning applies here. Collins's affidavit, which we must accept as true (*Robinson*, 2020 IL 123849, ¶ 45), establishes that he was sitting on the hood of a vehicle parked directly behind the Grand Am in which Turner, Armstrong, and Smith sat. When the shooting began, he ran and hid. As soon as the shooter drove away, Collins returned to his vehicle. He saw the occupants of the vehicle were dead, entered his own vehicle and drove away. Given his positioning on the hood of his vehicle directly behind the Grand Am, he would have been visible to Hardy, who observed the shooting. Smith and Hardy would also have observed him return to his vehicle and drive away immediately after the shooting. Indeed, as Hardy testified that she had run to Turner after the shooting and Smith was in the back of the Grand Am during the shooting,

they would have been in close proximity to Collins when he returned to the vehicle directly behind the Grand Am and drove away.

¶ 32    However, defendant offers no explanation for his failure to locate Collins. In his reply brief, he argues that it is "speculative" he could have learned about Collins through Smith or Hardy and that due diligence does not require him to outperform the police's investigation, as they also did not discover Collins. But defendant does not allege in his motion for leave to file, for instance, that Smith and Hardy failed to tell police that someone sat on the vehicle directly behind the Grand Am when the shooting occurred or entered that vehicle after the shooting and drove away. Nor does defendant allege that they mentioned such a person but his attorney and investigators could not locate him. He does not explain his efforts to identify anyone at the scene. In short, as in *Wingate*, he alleges no facts from which we could infer that he exercised due diligence in attempting to identify and locate Collins. *Wingate*, 2015 IL App (5th) 130189, ¶ 30.

¶ 33    Moreover, Collins did not aver in his affidavit that he was in any way unavailable or could not have been located. Thus, Collins's affidavit cannot be considered new evidence. *Coleman*, 2013 IL 113307, ¶ 96 (to be new, evidence must not have been discoverable earlier through due diligence); see also *Walker*, 2015 IL App (1st) 130530, ¶ 18 (defendant bears burden of showing due diligence); *Wingate*, 2015 IL App (5th) 130189, ¶ 27 (affidavit explaining why witness did not come forward did not address whether the defendant exercised due diligence).

¶ 34    In reaching this conclusion, we are not persuaded by defendant's reliance on *Anderson*, 2021 IL App (1st) 200040. There, affidavits were newly discovered for purposes of allowing the defendant leave to file a successive postconviction petition where the witnesses did not previously admit to witnessing a shooting, it was "unlikely" that the defendant or others "would have observed

or noticed them," and "they insured their anonymity by their immediate flight from the scene." *Id.* ¶ 65 (citing *Ortiz*, 235 Ill. 2d at 334 (witness newly discovered where he did not previously admit to witnessing crime, "would not have been seen by [the] defendant," left the area, and moved out-of-state)).

¶ 35    As discussed, here, it was not "unlikely" that anyone would have noticed Collins at the scene. He sat on the vehicle directly behind the Grand Am during the shooting. Although he then ran away, he returned to that vehicle, entered it, and drove away. Smith and Hardy could have observed him at either point. *Anderson* is therefore distinguishable.

¶ 36    In sum, where Collins's affidavit cannot be considered new evidence, defendant failed, as a matter of law, to make a colorable claim of actual innocence, and the court did not err in denying him leave to file a successive petition on that basis. *Sanders*, 2016 IL 118123, ¶ 24.

¶ 37    Defendant next argues that the circuit court erred in denying him leave to file a petition because he established cause-and-prejudice regarding his claim that his mandatory life sentence is unconstitutional due to his youth and background at the time of his offense. Defendant argues he has established cause because the record and law regarding his claim were insufficiently developed at the time of his direct appeal. He argues that he has established prejudice because his age and background at the time of the offense rendered him a young adult and the trial court did not consider appropriate factors when sentencing him. The State argues that defendant has not established cause or prejudice.[2]

---

[2] The State further argues that defendant waived this claim by not raising it in prior proceedings. However, as defendant correctly notes, the cause-and-prejudice test codified in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)) "is an exception to the statutory waiver rule," and permits the filing of a successive petition if the defendant demonstrates cause and prejudice. *People v. Walsh*, 2022 IL App (1st) 210786, ¶ 20; see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002) ("We hold today that the cause-

¶ 38 A defendant establishes cause where he identifies an objective factor that impeded his ability to raise a claim during earlier proceedings. 725 ILCS 5/122-1(f) (West 2020). He establishes prejudice where he demonstrates that the alleged constitutional violation "so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 39 In *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Supreme Court held that the prohibition on cruel or unusual punishment in the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) forbids mandatory life sentences without the possibility of parole for "those under the age of 18 at the time of their crimes." *Miller*, 567 U.S. at 465, 479. Our supreme court has subsequently held that, where an offender is younger than 18 years old, the trial court must consider certain factors before imposing a life sentence, including: his age and evidence of his "particular immaturity"; his family and home environment; his degree of participation in the homicide and any familial or peer pressure; his incompetence; and, his rehabilitative potential. *People v. Savage*, 2020 IL App (1st) 173135, ¶ 58 (citing *People v. Holman*, 2017 IL 120655, ¶ 46). *Miller* applies retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

¶ 40 Defendant was subject to mandatory life imprisonment because he was found guilty of murdering multiple people. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008) (when the death penalty is not imposed, court shall sentence a person who murdered multiple victims to life imprisonment). He was 21 years old at the time he committed the murders in this case. Twenty-one-year-old offenders cannot establish prejudice to file a successive postconviction petition raising an eighth

---

and-prejudice test is the analytical tool that is to be used to determine whether *** a claim raised in a successive petition may be considered on its merits.").

amendment claim as, " 'for sentencing purposes, the age of 18 marks the present line between juveniles and adults.' " *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 52 (quoting *People v. Harris*, 2018 IL 121932, ¶ 61). Thus, had defendant raised an eighth amendment claim, that claim would fail.

¶ 41   Defendant, however, argued his mandatory life sentence violated the Illinois Constitution's proportionate penalties clause. The proportionate penalties clause of the Illinois Constitution provides greater protection than the eighth amendment. *People v. Clemons*, 2012 IL 107821, ¶ 39. The clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has indicated that young adult offenders may, through the Act, establish under *Miller* that their life sentence is unconstitutional pursuant the proportionate penalties clause. See *Montanez*, 2022 IL App (1st) 191930, ¶ 53 (citing *Harris*, 2018 IL 121932, ¶¶ 40, 45, and *People v. Thompson*, 2015 IL 118151, ¶ 44). We have further concluded that young adult offenders may bring successive postconviction claims raising as-applied constitutional challenges to their sentence under the proportionate penalties clause where they received life sentences without consideration of the *Miller* factors. *Id.* ¶ 54.

¶ 42   Nevertheless, defendant's proportionate penalties claim fails because, at age 21 when he committed his offenses, he is not a "young adult offender." See *People v. Humphrey*, 2020 IL App (1st) 172837, ¶¶ 33-34 (holding that "for now[,] individuals who are 21 years or older when they commit an offense are adults for purposes of a *Miller* claim," and collecting statutes differentiating those who are younger than 21 from those who are 21 or older); see also *Montanez*, 2022 IL App

(1st) 191930, ¶ 56 (collecting cases concluding that *Miller* protections did not extend to offenders 21 years or older).

¶ 43    As defendant notes, this court has in one instance held that a defendant who was 21 years or older may invoke *Miller*'s protection in a collateral challenge. In *Savage*, the defendant was at least 21 years old when he committed first degree murder and attempted murder. *Savage*, 2020 IL App (1st) 173135, ¶ 2.[3] He was sentenced to 85 years' imprisonment, a *de facto* life sentence. *Id.* ¶ 59. He filed an initial postconviction petition claiming that his sentence violated the proportionate penalties clause. *Id.* ¶ 7. He alleged that he had been a drug addict since age nine, was influenced by gang members, used drugs every day when he committed the offenses, and committed the offenses while attempting to rob a drug house. *Id.* ¶¶ 7-8. He claimed his age and long-term drug addiction made him volatile and easily peer-pressured and his sentence did not account for his rehabilitative potential. *Id.* ¶ 7.

¶ 44    The circuit court in *Savage* dismissed the defendant's petition at the first stage. *Id.* ¶¶ 11-12. On appeal, we recognized that Illinois law treats adults younger than 21 years old differently than those 21 or older. *Id.* ¶¶ 67-69. However, we noted that case law supported his argument that an offender's mental health issues may lower his "functional age." *Id.* ¶ 70. Further, the record, including hospital reports submitted with his PSI, supported his allegations that his age, mental health issues, and drug addiction made him unusually volatile and susceptible to peer pressure. *Id.* ¶¶ 71-73. Thus, as his argument was supported by "both the filed record and recent case law," the circuit court erred in finding his claim frivolous and patently without merit. *Id.* ¶ 76.

---

[3] Although the defendant's petition alleged that he was 22 years old at the time of the offense, we later stated that he was "seven months past his 21st birthday." *Savage*, 2020 IL App (1st) 173135, ¶ 67.

¶ 45 Defendant argues that he has established cause to file a successive petition because *Savage* was decided after he filed his previous postconviction petition. However, *Savage* concerned an initial petition, not a successive petition. *Id.* ¶ 7. Defendants filing their initial petition face a lower burden than those seeking to file successive petitions. *People v. Hemphill*, 2022 IL App (1st) 201112, ¶ 34 (distinguishing *Savage* and noting that pleading requirements for successive petitions are higher than initial petitions).

¶ 46 Moreover, our supreme court has confirmed that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause" in a successive postconviction petition. *People v. Dorsey*, 2021 IL 123010, ¶ 74. The court in *Dorsey* reasoned:

> "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.*

¶ 47 Thus, even in cases decided after *Savage*, we have found under *Dorsey* that *Miller* and its progeny do not provide cause for an offender who was 21 or older to bring a successive postconviction petition raising a proportionate penalties claim. *Montanez*, 2022 IL App (1st) 191930, ¶¶ 67-69 (Rochford, J., specially concurring); *Hemphill*, 2022 IL App (1st) 201112, ¶ 31; *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶¶ 37-39; *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72.

¶ 48 Further, although there are cases where we have found that a defendant has established cause based on the evolution of juvenile sentencing law, in each of those cases the State conceded

the issue. *People v. Walsh*, 2022 IL App (1st) 210786, ¶¶ 32-33 (collecting cases and noting that, "when cause has been fully litigated, *** this court has universally applied the holding in *Dorsey* to conclude that cause has not been established based on the prior unavailability of *Miller* and its progeny"). The State does not concede the issue here. Thus, we conclude that, under *Dorsey*, defendant has not established cause.[4]

¶ 49    In sum, defendant has not established cause and prejudice warranting leave to file his claim that his sentence violates the proportionate penalties clause. Nor, as discussed, has he made a colorable showing of actual innocence based on Collins's affidavit. Accordingly, we affirm the circuit court's judgment denying him leave to file a successive postconviction petition.

¶ 50    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 51    Affirmed.

---

[4] In his reply brief, defendant briefly asserts that the failure of his counsels on direct appeal and in previous postconviction proceedings to raise his proportionate penalties claim "was not complet[e]ly in [his] control" and was an objective factor impeding his ability to raise the claim. However, to the extent he is arguing that prior counsels' failure to raise the claim in earlier proceedings establishes cause to bring his successive petition, we note that he did not raise that argument in his motion for leave to file a successive petition or in his opening brief. It is therefore forfeited. See, *e.g.*, *Dorsey*, 2021 IL 123010, ¶ 70 (claim not raised in petition for leave to file a successive petition or petition itself is forfeited); *Victim A. v. Song*, 2021 IL App (1st) 200826, ¶ 11 (appellant forfeits arguments not raised in opening brief).