2022 IL App (1st) 210786

No. 1-21-0786

Opinion filed June 30, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 5283 |
| | ) | |
| ANTHONY WALSH, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    The circuit court denied defendant Anthony Walsh's motion for leave to file a successive petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant contends that he satisfied the cause and prejudice test on his claim that his 35-year sentence violates the Illinois proportionate penalties clause.

¶ 2    For the reasons that follow, we affirm the judgment of the circuit court.[1]

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4      After a bench trial, defendant was found guilty of the first degree murder of Willie Lomax.

Defendant was sentenced to 35 years' imprisonment. We set forth the facts in defendant's direct

appeal (*People v. Walsh*, No. 1-00-2456 (2002) (unpublished order under Illinois Supreme Court

Rule 23)), and we recite them here to the extent necessary for our disposition.

¶ 5      On January 23, 1999, defendant, then 18 years old, was driving a vehicle in Chicago with

passengers Vincent Fox, Jessica Cosgrove, and Melissa Quinn. Defendant and Fox were members

of the "Two-Six" street gang. As the group drove west on 79th Street, they noticed three black

males walking down the street. The three individuals were Terrell Montgomery, Willie Griffin,

and Lomax.

¶ 6      Defendant and Fox said, "There goes the Blackstones. There goes the Vice Lords." Fox

then flashed gang signs out the back window and screamed "Blackstone Killer." Defendant then

drove the group to the "Two-Six" gang leader Red's house. There, the group ran into another

"Two-Six" gang member, 14-year-old Chris Kronenberger. A discussion ensued among defendant,

Fox, and Kronenberger about the three individuals the group had earlier seen walking on 79th

Street. Defendant and Fox directed Kronenberger to get a pistol.

¶ 7      The group, now including Kronenberger, got back into the car, and defendant drove them

back to 79th Street. Defendant and Fox told Kronenberger that because he was only 14, if he got

caught, he would not be tried as an adult and would only be incarcerated until he was 21. The

group then passed the three individuals again near 79th Street and Homan Avenue.

¶ 8      Defendant pulled the car into a nearby alley. Kronenberger got out of the car, ran out of

the alley, and shot the pistol a single time, taking Lomax's life. Kronenberger then ran back to the

waiting car, and defendant drove the group away. In the next few days, defendant and Fox spoke with Quinn and Cosgrove to construct an exculpatory version of events. The trial court found defendant guilty of the first degree murder of Lomax.

¶ 9    The case then proceeded to sentencing, where defendant faced a sentence of between 20 and 60 years' imprisonment. Defendant presented three witnesses in mitigation. Frank Ciaccia Jr. testified that he was a commodities trader and that defendant had worked for him off and on for a couple of years. Ciaccia had never known defendant to commit violent crimes or use drugs. Defendant comported himself with the "utmost respect," was "very responsible for the position he had," and would always "dress properly." Ciaccia concluded that if defendant was given the opportunity, he "could excel above and beyond" and that he could "make something very good of himself."

¶ 10    The other two witnesses were educators in the Department of Corrections. Nicholas Palumbo taught defendant vocational training, Monday through Friday, for four-and-a-half hours per day. Defendant had never exhibited any acts of violence and showed a lot of potential in carpentry. Leroy Walker testified that he was a gym teacher and that defendant was an active participant during gym periods. Defendant would lead and influence others during the sessions and got along well with everyone. Walker concluded that defendant spoke very well, kept up his appearance, and had the potential to be a "real citizen."

¶ 11    In allocution, defendant apologized to the family of the victim. He stated he was "truly sorry that this happened that way" and that "if [he'd] known that it was about to happen, [he] could have done something to stop it." Defendant concluded, "I'd just like to say that I'm sorry."

¶ 12    During arguments, defense counsel highlighted that defendant was found guilty "by accountability" and that defendant was "not the one who pulled the trigger." Defense counsel argued that the court had to look, pursuant to the Illinois Constitution, to defendant's potential for rehabilitation and then to the seriousness of the offense. Counsel argued that defendant had "a lot of things going for him." Counsel pointed to defendant's lack of criminal history in arguing that the offense was an "aberration." Counsel said the issue was "what to do with a kid like this." Counsel argued that defendant had "worked all of his life" because that is "how he was taught by his parents." Counsel asked for the minimum sentence of 20 years.

¶ 13    The trial court stated that it had read the presentence investigation (PSI) and all the letters written on defendant's behalf. The court also considered all the factors in aggravation and mitigation. The trial court did not find defendant's accountability status mitigating, as defendant had "encouraged a juvenile" to do the "dirty work" for him. The trial court stated that defendant "didn't have to turn out this way" and "get involved with that gang stuff if he didn't want to." The trial court took into consideration that defendant had no prior record and came from a good family. The trial court sentenced defendant to 35 years in prison.

¶ 14    On direct appeal, defendant argued that the State had failed to prove him guilty beyond a reasonable doubt and that the trial court erred in not allowing expert testimony to establish how various drugs affected Jessica Cosgrove's ability to perceive and remember events. This court affirmed defendant's conviction and sentence. *Walsh*, No. 1-00-2456 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15    Defendant filed his initial postconviction petition in June 2003. In the petition, defendant argued that (1) trial counsel was ineffective because trial counsel refused to allow him to testify,

(2) appellate counsel was ineffective for failing to properly argue the reasonable doubt issue on direct appeal, an actual innocence claim, and (3) the Truth in Sentencing Act (730 ILCS 5/3-6-3 (West 2002)) was unconstitutional because it conflicted with the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). The trial court dismissed defendant's petition at the first stage as frivolous and patently without merit. This court affirmed. *People v. Walsh*, No. 1-03-2873 (2005) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16 Defendant filed a motion for leave to file a successive postconviction petition in July 2007, alleging actual innocence. The trial court denied defendant leave to file and this court affirmed that decision. *People v. Walsh*, No. 1-07-2572 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17 On January 29, 2021, defendant filed the motion for leave to file a successive postconviction petition at issue in this appeal. Defendant alleged that his 35-year sentence violated the proportionate penalties clause, as applied to defendant. The trial court denied defendant leave to file, concluding that defendant's claim failed as a matter of law because defendant did not receive a *de facto* life sentence. Defendant appeals the trial court's denial of his motion for leave to file a successive postconviction petition.

¶ 18                                    II. ANALYSIS

¶ 19 The Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction resulted from the substantial denial of a constitutional right. *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17; *People v. Delton*, 227 Ill. 2d 247, 253 (2008). "[T]he Act contemplates the filing of only one post-conviction petition." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456

(2002). "Only when fundamental fairness so requires will the strict application of this statutory bar be relaxed." *Id.* at 458.

¶ 20    "[T]he cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in a successive petition may be considered on its merits." *Id.* at 459. The cause-and-prejudice test has been codified in the Act. Section 122-1(f) of the Act provides: "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018). Thus, section 122-1(f) is an exception to the statutory waiver rule, "permitting a successive petition, but only if the defendant first obtains permission from the court and demonstrates to the court cause and prejudice for not having raised the alleged errors in his or her initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 15.

¶ 21    "[A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." (Internal quotation marks omitted.) *Id.* ¶ 14. "[A] prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." (Internal quotation marks omitted.) *Id.* "[T]he cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 22    "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition

with supporting documentation is insufficient to justify further proceedings." *Id.* "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *Bailey*, 2017 IL 121450, ¶ 13.

¶ 23    Defendant's sole argument on appeal is that "the law and community standards around sentencing teenagers have changed since the time he was sentenced in 2000, such that his sentence violates the proportionate penalties clause of the Illinois constitution." Defendant argues that he established cause because the law has "substantively changed since his sentencing and original post-conviction petition." Defendant concludes that he established prejudice

> "because the science and case law evolved since he was sentenced in 2000, and the sentencing court did not take the attendant circumstances of his youth into consideration before it imposed the 35-year sentence that will keep him incarcerated into his 50s for an offense he committed when he was only 18 years old."

¶ 24    The State responds that defendant has not established cause because he failed to justify his failure to raise his proportionate penalties claim in earlier proceedings. The State continues that *Miller* and its progeny do not apply to defendant because he did not receive a life sentence. Finally, the State argues that the record shows that all the mitigation evidence was considered, including evidence covering the *Miller* factors, when the trial court gave defendant a discretionary 35-year sentence.

¶ 25    While defendant brings his claim under the Illinois proportionate penalties clause, the claim has its roots in the eighth amendment to the United States Constitution. The eighth amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. In a line of cases, the United States Supreme Court has applied the eighth amendment to juvenile offenders

who have committed serious offenses. In *Roper v. Simmons*, 543 U.S. 551 (2005), the Court held that the eighth amendment prohibited the "imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id.* at 578. In *Graham v. Florida*, 560 U.S. 48 (2010), the Court held that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Id.* at 82.

¶ 26 In *Miller v. Alabama*, 567 U.S. 460 (2012), the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. The Court then determined that the *Miller* holding applied retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). Most recently, the Court clarified that *Miller* only required a "discretionary sentencing procedure" and not any formal factual finding. *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1317 (2021).

¶ 27 The Illinois Supreme Court has also weighed in on the import of these decisions. Our supreme court in *People v. Reyes*, 2016 IL 119271, held that *Miller* applied to *de facto* life sentences. *Id.* ¶¶ 9-10. In *People v. Buffer*, 2019 IL 122327, our supreme court defined a *de facto* life sentence for a juvenile as a sentence of more than 40 years' imprisonment. *Id.* ¶ 41. Our supreme court has also held that *Miller* applies to discretionary, as well as mandatory, sentences (*People v. Holman*, 2017 IL 120655, ¶¶ 43-44), although the court has subsequently called that holding into question (see *People v. Dorsey*, 2021 IL 123010, ¶ 41). With the eighth amendment backdrop established, we turn to defendant's proportionate penalties claim.

¶ 28 The proportionate penalties clause provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A penalty violates the proportionate penalties clause

when it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). The Illinois Supreme Court has twice indicated that young adult offenders may establish an unconstitutional life sentence through a postconviction petition. In *People v. Thompson*, 2015 IL 118151, our supreme court rejected the 19-year-old defendant's as-applied constitutional challenge because it was raised for the first time on appeal. *Id.* ¶ 44. However, the court noted that the defendant was not prohibited from raising the issue through the Act. *Id.*

¶ 29    In *People v. Harris*, 2018 IL 121932, our supreme court reversed the appellate court's decision because the "appellate court held [the] defendant's sentence violated the Illinois Constitution without a developed evidentiary record on the as-applied constitutional challenge." *Id.* ¶ 40. The court concluded that because *Miller* did not apply directly to the 18-year-old defendant's circumstances, the record must be sufficiently developed to support the defendant's as-applied challenge. *Id.* ¶ 45.

¶ 30    We have described the import of *Thompson* and *Harris* as permitting "young adult offenders" to bring a postconviction claim "alleging that their sentences in excess of 40 years imposed without consideration of the *Miller* factors are unconstitutional as applied to them under the proportionate penalties clause." *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 69. With the overarching law between the Illinois proportionate penalties clause and the eighth amendment to the United States Constitution laid out, we can analyze whether defendant has satisfied the cause and prejudice test under section 122-1(f).

¶ 31    As discussed above, a defendant establishes cause by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction

proceedings." (Internal quotation marks omitted.) *Bailey*, 2017 IL 121450, ¶ 14. Defendant relies on the evolving case law and scientific research regarding young adult offenders to establish cause. However, in *Dorsey*, 2021 IL 123010, ¶ 74, our supreme court held that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." The court continued that "*Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59). Based on *Dorsey*'s clear holding, defendant cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition.

¶ 32    To be sure, this court has on occasion concluded that a defendant has established cause based on the evolution of the case law in the juvenile sentencing arena. However, it appears that when the court has done so, it has largely been based on the State's concession of the issue. See *Horshaw*, 2021 IL App (1st) 182047, ¶ 122 (noting that the State did not dispute that the defendant had established cause "based on the retroactive application of *Miller* to cases on collateral review"); *People v. Meneses*, 2022 IL App (1st) 191247-B, ¶ 17 ("The State concedes that defendant has established the first prong."); *People v. Green*, 2022 IL App (1st) 200749, ¶ 27 (noting that the State conceded that cause had been established "because the evolving case law involving the sentencing of youthful offenders was not available" when the defendant filed his prior petitions).

¶ 33    On the other hand, when cause has been fully litigated, as it was here, this court has universally applied the holding in *Dorsey* to conclude that cause has not been established based on

the prior unavailability of *Miller* and its progeny. See *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶¶ 36, 39. In *Figueroa*, this court began by noting that the State had "maintained from the outset" that the defendant had failed to satisfy the cause prong for filing a successive petition because he had not brought the claim in an earlier petition. *Id.* ¶ 36. This court then concluded that *Dorsey* was "entirely dispositive," based on the above-quoted language, and that the defendant had not established cause for his failure to raise his proportionate penalties claim in an earlier proceeding. *Id.* ¶ 39; see also *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72 ("The supreme court's reasoning in *Dorsey* also establishes that the defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution."); *People v. Hemphill*, 2022 IL App (1st) 201112, ¶ 31 ("It follows that, based on the supreme court's reasoning in *Dorsey*, defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution.").

¶ 34    In short, when cause has been litigated under these circumstances, and where the supreme court's decision in *Dorsey* was analyzed, this court has universally concluded that cause was not established based on the evolution of the case law beginning with *Miller*. Defendant has not established cause because the Illinois proportionate penalties clause existed long before he filed his initial postconviction petition and, thus, he could have raised the claim at that time. His failure to do so prohibits his current claim from proceeding, and the trial court properly denied defendant's motion for leave to file his successive petition.

¶ 35    Defendant has also not established prejudice. As defendant concedes, he was not sentenced to a *de facto* life sentence under *Buffer*. The Illinois Supreme Court made clear in *Buffer* that

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27.

We recognize that our supreme court has opened up the possibility that a young adult offender may establish that *Miller* applies to his or her case through the proportionate penalties clause. Nonetheless, the young adult offender must still prove the two prerequisites established in *Buffer*.

¶ 36    Defendant has not met the first requirement and, thus, his proportionate penalties claim fails. This court has held on numerous occasions that a defendant who did not receive a *de facto* life sentence cannot establish prejudice on a claim based on *Miller* and its progeny. See *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 31 (declining the defendant's "invitation to extend *Miller* to sentences of less than natural or *de facto* life imprisonment"); *People v. Woods*, 2020 IL App (1st) 163031, ¶ 57 (holding that the defendant's 33-year sentence did "not raise the constitutional concerns expressed in *Miller* and *Buffer*" because it was neither a mandatory life sentence nor a *de facto* life sentence); *People v. Benford*, 2021 IL App (1st) 181237, ¶ 16 (holding that because the "defendant did not receive a life sentence, either natural or *de facto*, he cannot establish the prejudice requirement necessary to excuse his failure to raise the claim that his sentence was unconstitutional at an earlier proceeding"). Because defendant did not receive a life sentence,

natural or *de facto*, he cannot establish prejudice for his earlier failure to raise a proportionate penalties claim based on *Miller* and its progeny.

¶ 37    While the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11) applies to "[a]ll penalties," not just life sentences, defendant has not independently argued that his 35-year sentence is "so wholly disproportionate to the offense as to shock the moral sense of the community." *Miller*, 202 Ill. 2d at 338. Instead, defendant consistently refers to his claim as an "as-applied *Miller* claim" where the trial court imposed the sentence "without consideration of his youth and potential for rehabilitation." As just discussed, a defendant raising an "as-applied *Miller* claim" must as a threshold requirement establish that his or her sentence amounts to *de facto* life. Because defendant has not done so, he cannot establish prejudice.

¶ 38    Finally, for completeness's sake, defendant could not on this record establish that his 35-year sentence is so "wholly disproportionate to the offense as to shock the moral sense of the community." While defendant describes himself as the "driver in a gang-related shooting," his participation in Lomax's murder was not passive.

¶ 39    Defendant first drove past three individuals he perceived to be from a rival gang. After passenger and fellow gang member Fox threw gang signs and yelled "Blackstone killer," defendant proceeded to drive to the gang leader's house. There, defendant enlisted the services of 14-year-old Chris Kronenberger. Defendant instructed Kronenberger to retrieve a pistol. Defendant then drove Kronenberger back to where the group saw the perceived rival gang members. On the way, defendant and Fox assured Kronenberger that he would not serve a lengthy sentence if he committed the shooting because of his young age. Defendant then drove into an alley, let

Kronenberger out, and waited while the 14-year-old Kronenberger completed the shooting. Kronenberger then got back into the car and defendant drove away.

¶ 40    This is not a typical accountability case, wherein the accomplice is normally less culpable than the principal. Defendant directed Kronenberger to get the pistol, and then defendant drove Kronenberger to the scene, all while assuring him that he would not serve a lengthy sentence. As the trial court found at sentencing, defendant "chose to get the juvenile to commit this murder for him." Defendant's actions as an accomplice were aggravating and not mitigating.

¶ 41    In short, defendant cannot establish that his 35-year sentence for enlisting the services of and directing 14-year-old Kronenberger to commit murder is "so wholly disproportionate to the offense as to shock the moral sense of the community." *Id.* As a result, he has failed to establish prejudice stemming from any earlier failure to raise a proportionate penalties claim. The trial court correctly denied his motion for leave to file a successive postconviction petition.

¶ 42                              III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 44    Affirmed.

---

2022 IL App (1st) 210786

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 99-CR-5283; the Hon. Stanley J. Sacks, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ashlee Johnson, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Gina DiVito, and Gina Savini, Assistant State's Attorneys, of counsel), for the People. |

---